**UNITED STATES of America,**
**Plaintiff,**

v.

**Gerardo Thomas GARZA, Defendant.**

**No. 1:02CR42.**

United States District Court,
D. Utah,
Central Division.

June 25, 2003.

Rebecca C. Hyde, Henri R. Sisneros, Utah Federal Defender Office, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the Court on defendant's Motion to Suppress Evidence that was seized as the result of a warrantless search of a motel room. An evidentiary hearing was held on January 27 and 31, 2003. A transcript of the proceedings was produced and the parties filed written briefs. After oral argument was heard on April 16, 2003, the Court took the matter under advisement. Now being fully advised, the Court issues its Memorandum Decision and Order.

### Statement of the Facts

On April 19, 2002, two Ogden City Police officers were engaged in a routine check of motels by conducting a so-called "knock and talk" procedure to investigate possible drug activity. In this regard, they asked Candis Daich, the desk clerk of the Motel 6 located at 1455 Washington Boulevard, Ogden, Utah whether there were any suspicious activities at the motel. Because of past criminal activity in the area, officers had previously trained the motel clerks in how to recognize possible drug activity in the motel, such as excessive foot traffic, a high number of telephone calls to and from a room, a guest with a local address, lack of a reservation, and a cash payment. The officers would then routinely check in with the clerk on duty in the motel to see whether on particular occasions there were any rooms that exhibited such previously discussed indications of criminal activity. Ms. Daich had received training from the police department and on the night of April 29, 2002 she indicated that officers should check out Room 133. Accordingly, the officers knocked on the door of Room 133. A male voice asked who was there and the officers responded "It's the police," whereupon a partially clothed female, later identified as Rosa Reyes Ambris, came to the door and asked if there was a problem. The officers asked if they might speak with her and Ms. Ambris responded that she wanted to put on some clothes first.

After Ms. Ambris returned to the door, she opened it and backed in so that the officers might enter. The officers entered the room and immediately heard the bathroom door slam shut. However, due to a defective door latch, the door did not remain fully closed. When asked if anyone else was there, Ms. Ambris responded that her boyfriend Gerry was there. The officers called out through the bathroom door for Gerry to come talk with them. There was no response. A few moments later one of the officers pushed the door, which was slightly ajar, revealing defendant Gerardo Garza slumped in the corner. When asked to show his hands, the officers could see that the defendant was holding a firearm. The officers drew their weapons and attempted to take cover ordering Garza to

drop the gun. Soon thereafter Garza pointed the gun in his mouth. The officers backed away. Garza moved toward the window, opened it with his free hand and jumped out. After a short chase, Garza was taken into custody and his firearm was seized.

The defendant now seeks to suppress the firearm which was obtained as a result of what he alleges to have been an unreasonable search of the motel room, and particularly the bathroom.

At oral argument the government and the defense characterized the actions by the officers differently. The government argued that it was a consensual encounter that later resulted in an arrest or "seizure" of the defendant. Defense counsel argued that the officers engaged in an illegal "search." The analysis is somewhat different depending on whether the actions of the officers constitute as a search or a seizure.

## Analysis

### I. SEARCH

Defense counsel characterizes the actions of the officers in the motel room as an "illegal search." For purposes of the Fourth Amendment, the word "search" traditionally is understood to imply "some exploratory investigation, or an invasion and quest, a looking for or seeking out.... A search implies a prying into hidden places for that which is concealed and out of the way." WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.1(a) (3d ed.1996) (citing C.J.S. *Searches and Seizures* § 1 (1952)). Professor LaFave has observed that the Supreme Court "has never managed to set out a comprehensive definition of the word." *Id.* at § 2.1(a).

Well within the aforesaid traditional definition, the actions of the officers in this case may be reasonably characterized as "exploratory prying" for something that is concealed. Accordingly, the action of opening the door constituted a search for the purposes of the Fourth Amendment. This does not end the inquiry, however, because warrantless searches may be justified if supported by probable cause or exigent circumstances in conjunction with "something approaching probable cause." *See United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986).

### A. Probable Cause

The Tenth Circuit has noted that it is impossible to articulate what "reasonable suspicion" and "probable cause" mean because "[t]hey are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Mercado,* 307 F.3d 1226, 1230 (10th Cir. 2002) (quoting *Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)).

The existence of probable cause requires a determination by police officers that such cause exists because of a probability that the criminal law is being violated. In determining whether probable cause exists, an officer may draw on his own experience because "[a]ctions and things observed by an experienced law enforcement officer may have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman." *United States v. McClard,* 333 F.Supp. 158, 164 (E.D.Ark.1971). See also *United States v. McRae* wherein the Tenth Circuit noted that Courts should "defer to 'the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.' " 81 F.3d 1528, 1534 (10th Cir.1996) (citing *United States v. Martinez–Cigarroa,* 44 F.3d 908, 912 (10th Cir.) (additional citations omitted)).

■ At the time the officers pushed the bathroom door partly open they were confronted with unusual and suspicious circumstances: (1) by indicating that they should check out Room 133, the officers reasonably believed that the desk clerk at the motel thought that there was suspicious activity in the room;[1] (2) a male who initially responded did not come to answer the door; (3) upon entering with consent of a female occupant, the bathroom door was slammed shut; and (4) a male person in the bathroom refused to respond to the officers upon inquiry.

■ Although in this case there is little evidence of actual criminal activity, the police officers were aware of such activity in the area, and had reasonable suspicion of such in this case. The Supreme Court has held that probable cause requires "less than evidence that would justify ... conviction" but "more than bare suspicion." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (citing *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). In this case, the circumstances before them caused the officers to have a reasonable suspicion that they would find evidence of criminal activity in the bathroom. Accordingly, this court determines that probable cause did exist. Nevertheless, the Court proceeds to consider whether "exigent circumstances" also were present. In *United States v. Edwards* the Tenth Circuit stated that both probable cause and exigent circumstances must be present: "... the police may conduct a warrantless search where they have probable cause to search the area in question *and* exigent circumstances exist to make the warrant requirement impracti-

cal." 242 F.3d 928, 939 (10th Cir.2001) (emphasis added).

## B. Exigent Circumstances

The Supreme Court consistently has held that there are certain types of searches which may be conducted without a search warrant if supported by the existence of exigent circumstances. *See e.g. Kirk v. Louisiana,* 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The Court, however, has been careful to note that "only in 'a few specifically established and well-delineated' situations may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it." *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). In *Vale,* the Supreme Court listed possible exceptions to procuring a warrant for search of a dwelling, and noted that none of the exceptions were present in that case: "There is no suggestion that anyone consented to the search.... The officers were not responding to an emergency.... They were not in hot pursuit of a fleeing felon.... The goods ultimately seized were not in the process of destruction.... Nor were they about to be removed from the jurisdiction." *Id.* at 35, 90 S.Ct. at 1972 (citations omitted).

In the case at bar, the government relies on the totality of the circumstances already described above as constituting exigent circumstances. The officers couldn't see into the bathroom except though a crack in the slightly open door, but they

---

1. At oral argument, the government stressed reasonable suspicious activity as noted by the desk clerk: 1) the person who checked in paid in cash, 2) she gave a local address, 3) there was no reservation, and 4) there was an above average amount of foot traffic and telephone calls to and from the room.

were aware that a man was in the bathroom who would not respond to the police officers' inquiries. The officers were reasonably suspicious that the man could be destroying evidence and that a flush of the toilet would be too late to salvage the evidence. Most importantly, the officers were reasonably suspicious that the man might possess dangerous chemicals and that the man in the bathroom could be arming himself implicating the safety of the officers.

Defendant argues that no exigent circumstances existed because the officers had no direct proof of destruction of evidence such as the sound of a flushing toilet or running water. Neither was there any evidence of a firearm prior to the opening of the bathroom door. In *United States v. Carr*, police officers entered a motel room without a warrant, but the circumstances were considered exigent because a confidential informant had seen the drugs and told the officers that drugs were in the room, the officers could smell PCP just outside the room, the officers could hear shouting and shuffling, and the officers heard the toilet flush. 939 F.2d 1442 (10th Cir.1991). These facts were held to be sufficient to justify exigent circumstances in that case.

Although none of the factors specified in *Carr* are present in this case, exigent circumstances nevertheless may be present based upon the totality of the circumstances. Factors of particular importance in determining the existence of exigent circumstances were described in *United States v. Smith*, 797 F.2d 836 (10th Cir. 1986), where the Tenth Circuit stated:

> "The basic aspects of the 'exigent circumstances' exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must

not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, *approaching probable cause*, to associate an emergency with the area or place to be searched."

*Smith* at 840 (emphasis added). *See also United States v. Rhiger*, 315 F.3d 1283 (10th Cir.2003); *United States v. Wicks*, 995 F.2d 964 (10th Cir.1993).

The factors set forth in *Smith* when applied to the case at bar make it clear that pushing the door open did not constitute an unreasonable search because exigent circumstances were present. At the time the officers pushed the bathroom door open they reasonably believed that their safety was dependent on knowing who was in the bathroom and what he was doing. Moreover, the officers did not push the door open to seize evidence or to arrest the person in the bathroom.

This court considers that the suspicious circumstances previously discussed supply a reasonable basis "approaching probable cause" to associate an emergency with the area to be searched. In this regard, the existence of probable cause to the extent required in support of the existence of exigent circumstances may be based on a lesser standard which "approaches" probable cause as was enunciated in *Smith*.

The officers were aware there was a male in the bathroom who had slammed the door, appeared to be hiding and refused to respond to them. This court determines that exigent circumstances were present in this case based upon the totality of circumstances confronted by the officers. It was reasonable for the officers to "search" the area by opening the door to discover what the man in the bathroom was doing in the interest of their own safety.

## II. SEIZURE

■ It is Hornbook law that a person as well as property may be seized, which includes "not only full-fledged arrests, but also 'investigatory detentions' and any other 'detention of the [person] against his will.'" LaFave, Search and Seizure § 2.1(a) (citations omitted). The Tenth Circuit has recognized three types of police-citizen encounters which may result in constitutionally permissible seizures of a person: "(1) consensual encounters which do not implicate the Fourth Amendment ...; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity ...; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Davis,* 94 F.3d 1465, 1467–68 (10th Cir.1996) (citing *Michigan v. Chesternut,* 486 U.S. 567, 574–76, 108 S.Ct. 1975, 1979–81, 100 L.Ed.2d 565 (1988); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *Hayes v. Florida,* 470 U.S. 811, 815–16, 105 S.Ct. 1643, 1646–47, 84 L.Ed.2d 705 (1985) (additional citations omitted)).

■ A consensual encounter does not necessarily result in seizure of a person, but may elevate to an investigative detention if it becomes non-consensual. In this regard, the Supreme Court has stated: "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). *See also Gallegos v. City of Colorado Springs,* 114 F.3d 1024, 1028 (10th Cir. 1997) (noting the test is whether the person is free to "decline the officers requests or otherwise terminate the encounter").

The parties agree that entry into the motel room was consensual and that from the initial entry up until the time that police officers were about to enter the bathroom the encounter remained consensual. Defense counsel submits that pushing the bathroom door open was not consensual and constituted a Fourth Amendment seizure. This necessitates consideration of the scope of consent given in this case, and whether there was a reasonable suspicion to go beyond the consent given.

### A. Consensual Seizures

■ The scope of consent required to support a seizure which does not implicate the Fourth Amendment under Tenth Circuit case law is that of "objective reasonableness," i.e. what a typical reasonable person would have understood by the exchange between the officers and the suspect. *United States v. Osage,* 235 F.3d 518, 520 (10th Cir.2000). The parties do not dispute that Ms. Ambris consented to entry into the motel room by the police officers in order to answer the officer's questions. Also, that she allowed the officers to enter the motel room is apparent from the record. There is not, however, any evidence that Ms. Ambris consented verbally or nonverbally—or objected to— opening the bathroom door. Under the circumstances, the Court considers that a reasonable officer could not conclude that the consent given by Ms. Ambris to enter the motel room included permission to enter the bathroom. Moreover, there is no evidence that the defendant verbally agreed to answer the officers' questions, nor did he verbally allow them to open the bathroom door or to enter the bathroom. Although the door was not fully closed, even though he had made an apparent attempt to force it closed in spite of a defective closing apparatus, the defendant did not offer verbal or nonverbal consent to the entry.

▮ It is apparent to the court that neither Ms. Ambris nor the defendant consented to the opening of the bathroom door or to entry into the bathroom. It follows that no consensual seizure occurred.

### B. Seizure Constituting Investigative Detentions

The Supreme Court has enunciated the test in determining the existence of "seizure" by reason of a police officer's actions:

> "[W]hether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"

*Bostick*, 501 U.S. at 437, 111 S.Ct. at 2387 (citing *Michigan v. Chesternut*, 486 U.S. at 569, 108 S.Ct. at 1977).

▮ In the present case, defendant Garza attempted to ignore the police and "go about his business" of remaining in the bathroom with the door closed. However, when the police pushed the mostly closed door partly open, Garza was no longer at liberty to ignore them—they demanded his attention. This Court considers that as soon as the officers pushed the door open, Garza was "seized." However, the seizure may constitute a constitutionally permissible "investigatory detention" if reasonable and supported by reasonable suspicion of criminal activity. *See Davis*, 94 F.3d at 1467–68.

The Tenth Circuit has established a two-step inquiry to determine whether an investigative detention is reasonable under the Fourth Amendment. "First, we must ascertain whether the detention was 'justified at its inception.' ... The second step in determining the reasonableness of an investigative detention consists of determining whether the officers' actions are 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Gallegos*, 114 F.3d at 1028 (citing *United States v. King*, 990 F.2d 1552, 1557 (10th Cir.1993) (internal citations omitted)).

#### 1. Was the detention justified at its inception because of Reasonable Suspicion?

▮ The detention was justified at its inception if supported by reasonable suspicion "that [the] detainee has committed or is about to commit a crime." *Gallegos* at 1028. As stated above, the entry into the room was consensual, so only the pushing of the bathroom door need be supported by reasonable suspicion. There were several suspicious facts already discussed that the officers were aware of prior to the pushing of the door.

▮ The "Fourth Amendment 'does not require police officers to close their eyes to suspicious circumstances.'" *Id.* (citing *United States v. Walraven*, 892 F.2d 972, 976 (10th Cir.1989) (internal citations omitted)). Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). If the sum total of these facts is sufficient to form a reasonable suspicion of criminal activity, the detention was justified at its inception.

Defense counsel attempted to explain the slamming of the bathroom door as innocent. It appears that this particular bathroom door had difficulty staying shut and would only do so if slammed. However, the officers would not have known that when they pushed the door. The slamming door no doubt appeared unusual and evasive. The Supreme Court has noted that "[its] cases have recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illi-*

*nois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000).

The Court finds the totality of the circumstances to be sufficient to constitute reasonable suspicion of criminal activity so that the detention was justified at its inception.

*2. Were the officers' actions reasonably related to the criminal activity being investigated?*

The second step refers to the scope of the detention. "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the detention. The scope of the detention must be carefully tailored to its underlying justification." *United States v. Gutierrez–Daniez,* 131 F.3d 939, 942 (10th Cir.1997) (citing *United States v. Wood,* 106 F.3d 942, 945 (10th Cir.1997)).

Here the purpose of the detention was to talk with the person who was in the bathroom and discover if any criminal activity was taking place. Defendant claims that the opening of the door to the bathroom exceeded the scope of detention. However, that action was sufficient to accomplish the purpose of the detention without going beyond it.

This Court finds that the opening of the bathroom door constituted a seizure in the nature of an investigatory detention, but that it was supported by reasonable suspicion and did not exceed the scope of the detention. Accordingly, the seizure did not violate the Fourth Amendment.

### Conclusion

The action of the officers pushing the bathroom door open in the motel room did not violate the Fourth Amendment whether such action be regarded as a search or a seizure or both. If regarded as a search, the intrusion was supported by probable cause and exigent circumstances "approaching probable cause." If regarded as a seizure, such constituted a constitutionally permissible investigative detention that was supported by reasonable suspicion at its inception and did not exceed the scope of detention, being reasonably related to the suspected criminal activity.

For the foregoing reasons, the Motion to Suppress is DENIED.

This case is set for a status and scheduling conference on July 2, 2003 at 3:00pm to set a trial date and other requirements including submission of stipulated jury instructions and verdict form, as well as other issues related to the trial.

IT IS SO ORDERED.