Lillian BARTON, Plaintiff,

v.

CITY AND COUNTY OF DENVER, Officer R. Blea, Badge No. 99006, Officer N. Sagen, Badge No. 96–021, Officer John Doe, Mayor John Hickenlooper, in his Official capacity, Wellington Webb, as former Mayor, in his Official capacity only, Gerald R. Whitman, in his Official capacity as Chief of Police, City and County of Denver, J. Wallace Wortham, Jr., former Denver City Attorney, in his Official capacity, and Chris Ramsey, former Denver Deputy City Attorney, in his Official capacity only, Defendants.

City and County of Denver; Richard Blea; Nick Sagan; Josh Vasconcellos; Mayor John Hickenlooper; Wellington Webb; Gerald R. Whitman; Rudy Sandoval; J. Wallace Wortham, Jr; and Chris Ramsey, Defendants.

Civil Action Nos. 03–cv–02633–PSF–PAC, 04–cv–00319–PSF–PAC.

United States District Court, D. Colorado.

June 2, 2006.

Lillian Barton, Evergreen, CO, Pro se.

Sonja S. McKenzie, Thomas Sullivan Rice, Brett Anthony McDaniel Senter, Goldfarb & Rice, LLC, Denver, CO, for Defendants.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE DATED MARCH 21, 2006.

FIGA, District Judge.

This matter comes before the Court on the Recommendation of the Magistrate Judge filed March 21, 2006 (Dkt.# 208), defendants' Objection thereto filed April 4, 2006 (Dkt.# 210), plaintiff's Initial Objection thereto filed April 4, 2006 (Dkt.# 211), her Second Objection filed April 10, 2006 (Dkt.# 215), and defendants' Response to Plaintiff's Objections (Dkt.# 220) filed May 5, 2006. The matter is ripe for determination.

The Magistrate Judge recommended granting in part and denying in part the defendants' Motion for Partial Summary Judgment filed August 15, 2005 (Dkt.# 144). In order to set forth the import of the Magistrate Judge's Recommendation, it is necessary to first set forth the plaintiff's claims, all of which arise out of an incident that occurred on February 24, 2002, when plaintiff was detained by Defendant Denver Police Officers Sagan, Blea and Vasconcellos ("defendant officers"). Plaintiff was subsequently charged by the Denver City Attorney with violation of a municipal code provision prohibiting

interference with police authority, but the prosecution was dismissed prior to trial for lack of probable cause. The details of the incident and the subsequent events are set forth in the Recommendation of the Magistrate Judge and need not be repeated here.

## A. PLAINTIFF'S CLAIMS AND DEFENDANTS' MOTION

Plaintiff originally filed her complaint in Civil Action No. 03–F–2633 (now 03–cv–2633–PSF–PAC) on December 26, 2003, which defendants answered on February 9, 2004. On February 20, 2004, plaintiff filed a motion seeking leave to file a First Amended Complaint requesting to add parties and to recast her claims for relief, but before that motion was ruled on plaintiff filed her complaint in Civil Action No. 04–F–0319 (now 04–cv–319–PSF–PAC) on February 23, 2004, which was essentially the same as the pending proposed amended complaint. By Order of this Court entered on March 8, 2004, the two cases were consolidated. Thus the complaint in Civil Action No. 04–F–0319 became the operative complaint. The Court notes that at the time these pleadings were filed plaintiff was represented by counsel.

The complaint in Civil Action No. 04–F–319 contains six claims for relief. Plaintiff's First Claim for Relief alleges that Defendants Sagan, Blea and Vasconcellos, in violation of 42 U.S.C. § 1983, violated plaintiff's constitutional rights to be free from an unlawful arrest, unlawful search and the use of excessive force. The Second Claim for Relief avers that Defendants Sagan, Blea and Vasconcellos, together with Defendants Wortham, Sandoval and Whitman, in violation of 42 U.S.C. § 1983, assisted in a malicious prosecution of the plaintiff following the incident of February 24, 2002. The Third Claim for Relief asserts that Defendants Wortham, Sandoval and Whitman, together with Defendants Webb, Ramsey and Hickenlooper, in viola-

tion of 42 U.S.C. § 1983, violated plaintiff's constitutional and civil rights by condoning "a policy of covering up misconduct by police officers through the malicious prosecution of persons mistreated by police officers as well as through other means." Complaint at ¶ 84. The Fourth Claim for Relief alleges common law malicious prosecution, apparently by Defendants Wortham and Ramsey only. The Fifth Claim for Relief contends that the conduct of all defendants (other than Hickenlooper) constitutes the torts of intentional infliction of emotional distress and outrageous conduct. The Sixth Claim for Relief seeks an injunction against Defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey from continuing to enforce the asserted policy of covering up police misconduct.

The Defendants' Motion for Partial Summary Judgment seeks dismissal of all of the claims filed by the plaintiff, with the exception of that portion of her First Claim for Relief to the extent it alleges that plaintiff was unlawfully arrested and searched by Defendants Sagan, Blea and Vasconcellos in connection with the incident that occurred on February 24, 2002, and that portion of her Fifth Claim for Relief to the extent it alleges that such conduct by these three defendants constitutes outrageous conduct (Defendants' Motion for Partial Summary Judgment at 2–3).

## B. THE MAGISTRATE'S RECOMMENDATION

In a detailed 36–page Recommendation, the Magistrate Judge carefully analyzed the applicable law and the facts pertaining to each of plaintiff's six claims for relief. In order to address the parties' respective objections to the Recommendation, a summary of the Magistrate Judge's conclu-

sions and analysis as to each claim is set forth below.

### 1. *Plaintiff's First Claim for Relief*

■ To the extent plaintiff's First Claim for Relief alleges the unlawful use of excessive force by Defendants Sagan, Blea and Vasconcellos, the part of that claim as to which defendants request summary judgment, the Magistrate Judge first noted that the standard for determining whether excessive force was employed differs depending on whether the incident at issue is deemed an "arrest" or "investigative stop" as police may be able to use more force in making an arrest than in effecting an investigative stop, citing to *Cortez v. McCauley*, 438 F.3d 980, 995 (10th Cir.2006).[1] As the circuit panel also explained in *Cortez*, an arrest is "unreasonable" under the Fourth Amendment if it is not supported by "probable cause" to believe an offense was being or was about to be committed. An unreasonable investigative stop occurs when the investigative detention is "not supported by reasonable suspicion." *Id.* at 989.

The Magistrate Judge found that there were actually two separate arguable seizures of plaintiff that occurred on February 24, 2002, the first involving plaintiff being removed from her vehicle, handcuffed, placed in the back of a patrol car and later released (described in the Recommendation as the "first arrest") and a second incident later when plaintiff, after being released from the patrol car, was grabbed by her shoulders from behind and restrained while Officer Blea retrieved plaintiff's driver's license from her purse

(described in the Recommendation as the "second arrest"). (Recommendation at 1200 – 01). Although the Magistrate Judge and the parties all agree that both of these incidents are properly described as "seizures" within the meaning of the Fourth Amendment, the parties apparently do not agree whether they should be treated as "arrests" or "investigative stops."

■ As the Magistrate Judge further noted, the *Cortez* case also holds that if the arrest or investigative stop (seizure) is ultimately determined to be unlawful, that is, it is not supported by probable cause in the case of an arrest or reasonable suspicion in the case of an investigative stop, the plaintiff may **not** recover separately on a claim for excessive force *(id.)*. This is because "[a]ny force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful." *Id.* at 996. "Therefore, when an excessive force claim rests solely on an allegation that the force was excessive because the underlying seizure itself was unlawful" a jury cannot be permitted to award damages on both the claim for unlawful seizure and the claim for excessive force in effecting the seizure. *Id.* Thus the Magistrate Judge correctly recognized that under such circumstances, plaintiff's excessive force claim is subject to the entry of summary judgment if the arrest or investigative detention that occurred on February 24, 2002 is found to be unlawful (Recommendation at 1201).[2]

On the other hand, as the Magistrate Judge correctly found, if the seizure of

---

1. The Court notes that while the Magistrate Judge relied substantially on the decision in *Cortez v. McCauley, supra,* the parties did not have the benefit of that decision at the time they briefed the Defendants' Motion for Partial Summary Judgment as it was issued on February 10, 2006.

2. Here, because Defendants' Motion for Partial Summary Judgment does not challenge that part of the plaintiff's First Claim for Relief asserting an unlawful seizure of plaintiff, the merits of that claim were not before the Magistrate Judge, nor are they presently before the Court, but rather are reserved for the jury trial set for June 19, 2006.

plaintiff that occurred on February 24, 2002 is found to be lawful, the question remains whether the amount of force used was reasonable in light of the "totality of the circumstances" as explained in *Graham v. Connor,* 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

The Magistrate Judge here found that if the first seizure of plaintiff, as described above, is deemed to be an "arrest," the amount of force used by Defendants Sagan, Blea and Vasconcellos was not excessive based on her very detailed analysis of decided cases addressing excessive force claims in the context of an arrest (Recommendation at 1201 – 03). Thus, the Magistrate Judge recommended granting these defendants' motion for summary judgment as to the excessive force claim, even if the evidence at trial showed the arrest was lawful, because the defendants are entitled to qualified immunity as the existing law would not have put defendants on notice that their conduct in effecting an arrest of plaintiff was unreasonable under the circumstances *(id.* at 1203). In summary, the Magistrate Judge recommended that summary judgment be granted for the defendants on the excessive force claim insofar as it relates to the "first arrest" of plaintiff, if in fact that incident is found to be an arrest, whether the arrest is found to be unlawful or lawful.

Yet, the Magistrate Judge also found that with respect to the first seizure that a "jury could conclude that plaintiff was seized during the course of an investigative detention," as opposed to an arrest *(id.* at 1203). As discussed above the standard for reasonable conduct may differ in the context of an investigatory stop. Here, the Magistrate Judge found that there were disputed issues of material fact about whether the defendants' action in removing plaintiff from her car, handcuffing her and placing her in the patrol car, "constituted an unreasonable use of force in the context of a possibly lawful investigative detention." *(Id.* at 1205). Thus, the Magistrate Judge recommended denying these defendants' motion for summary judgment as to the excessive force claim, "to the extent the challenged use of force occurred during a lawful investigatory detention." *(Id.* at 1205).

The Magistrate Judge further found that the second seizure of plaintiff on February 24, 2002 did not have the characteristics of an arrest, and that a reasonable jury could conclude it "was part of a lawful investigatory detention." *(Id.* at 1205 – 06). Nonetheless, the Magistrate Judge found that the alleged use of force incident to that investigation, namely the restraining of plaintiff's arms while Defendant Blea searched plaintiff's purse, could not have been known by defendants to be a clear violation of established law based on the cited case law, and therefore found that defendants were entitled to qualified immunity and summary judgment in their favor *(id.* at 1206).

Ultimately, the Magistrate Judge recommends dismissal of all of plaintiff's claims of excessive force, except to the extent plaintiff alleges the use of excessive force in connection with the first seizure that occurred on February 24, 2002. In reaching this conclusion, the Magistrate Judge appears to assume that a jury may be permitted to determine whether the first seizure was an arrest or an investigatory detention *(id.* at 1203).

### 2. *Plaintiff's Second Claim for Relief*

With respect to the plaintiff's Second Claim for Relief, which alleges violations of 42 U.S.C. § 1983 and malicious prosecution by Defendants Sagan, Blea and Vasconcellos, together with Defendants Wortham, Sandoval and Whitman, the Magistrate Judge found that: (1) the claims against Defendants Sagan and Blea should not be dismissed because there was some evidence that these defendants made false or misleading statements on plaintiff's criminal citation, which under *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir.2004) and other case law could give rise to Section 1983 liability if the statements lead to prosecution (Recommendation at 1207–09); (2) that the claims against Defendant Vasconcellos should be dismissed because there is no evidence he made any false statements in support of the criminal citation issued to plaintiff (*id.* at 1209); (3) that the claims against Defendant Wortham, the Denver City Attorney, must be dismissed because he is entitled to prosecutorial immunity (*id.* at 1209); and (4) that the claims against Whitman and Sandoval must be dismissed because plaintiff has shown no "personal participation" by them in the alleged civil rights violation (*id.* at 1209).

### 3. *Plaintiff's Third Claim for Relief*

The Magistrate Judge recommended dismissal of plaintiff's Third Claim for Relief because plaintiff had come forward with no admissible evidence to show the existence of a Denver City policy to cover up police misconduct that allegedly violates citizens' Fourth Amendment rights (*id.* at 1210). Nor had plaintiff come forward with any evidence to show that Defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham or Ramsey authorized or acquiesced in the defendant officers' conduct that allegedly violated plaintiff's Fourth Amendment rights (*id.* at 1210–11). Finally, the Magistrate Judge found plaintiff had offered no evidence of a municipal policy to prosecute individuals mistreated by the police (*id.* at 1211). Accordingly, the Magistrate Judge recommended dismissal of plaintiff's Third Claim for Relief in its entirety.

### 4. *Plaintiff's Fourth Claim for Relief*

The Magistrate Judge recommended dismissal of plaintiff's Fourth Claim, alleging common law malicious prosecution by the Denver City Attorney Defendants Wortham and Ramsey, on the ground that such claims are barred by the doctrine of prosecutorial immunity.

### 5. *Plaintiff's Fifth Claim for Relief*

The Magistrate Judge recommended granting defendants' motion as to plaintiff's Fifth Claim, alleging common law outrageous conduct, insofar as it pertains to Defendants Webb, Whitman and Sandoval, on the grounds that these three defendants had no personal involvement in the conduct alleged by plaintiff to be outrageous, and as to Defendants Wortham and Ramsey because they have prosecutorial immunity as to any such claims (*id.* at 1212). Defendants did not move for summary judgment on the Fifth Claim insofar as it pertained to Defendants Sagan, Blea and Vasconcellos (*id.* at 1211).

### 6. *Plaintiff's Sixth Claim for Relief*

The Magistrate Judge recommended dismissal of plaintiff's claim for injunctive relief because plaintiff conceded in her deposition that she was not seeking an injunction against any of the defendants.

## C. STANDARD OF REVIEW

Defendants' motion is presented as a motion under Rule 56 seeking partial summary judgment on certain claims as referenced above. The very purpose of a summary judgment motion is to assess

whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). In other words, there "must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995), *cert. denied*, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits. F.R.Civ.P. 56(c). When applying this standard, a court must view the factual record in the light most favorable to the nonmovant. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the instant case, plaintiff, now a *pro se* party, did not file a response on the merits to the defendants' motion, but only objected to the use of a copy of her deposition transcript *(see* Dkt. ## 163, 180). The Magistrate Judge nonetheless found, relying on *Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir.2002), that although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c), F.R.Civ.P. (Recommendation at 1200).

Rule 72(b), F.R.Civ.P., provides that the undersigned should make a *de novo* determination upon the record, or upon any additional evidence, of any portion of the Magistrate Judge's Recommendation to which the parties have made specific objec-

tion. Because the parties have filed written objections to separate portions of the Recommendation, the Court separately reviews those respective objections.

## D. REVIEW AND ANALYSIS OF PLAINTIFF'S OBJECTIONS

In plaintiff's Initial Objection (Dkt # 211) she first objects to the Magistrate Judge's characterization of certain facts as "undisputed" and to the description of other facts (Plaintiff's Initial Objection at ¶¶ 1–6). The Court finds that the factual disputes asserted by plaintiff are primarily over details of the events and are not material to the issues upon which the Magistrate Judge made her Recommendation.

Plaintiff next objects that any references to her deposition transcript, attached to as an exhibit to defendant's motion, on the grounds that the transcript is not accurate and she submitted many pages of corrections after the motion was filed (Plaintiff's Initial Objection at ¶ 7). While it is true that the Recommendation of the Magistrate Judge does cite to various pages of the plaintiff's deposition transcript, plaintiff has not indicated any specific material testimony referenced by the Magistrate Judge that she claims was not properly recorded.

Plaintiff next appears to assert that defendants' claims of qualified immunity and sovereign immunity should not be decided on summary judgment (Plaintiff's Initial Objection at ¶ 8). The Magistrate Judge did not recommend dismissal of any claims based on sovereign immunity. Defenses of qualified immunity can be determined at the Rule 12(b) stage of a case as plaintiff suggests, but they need not be. Questions of qualified immunity may be determined on motions for summary judgment.

Plaintiff further argues over whether the defendants are entitled to qualified immunity for the alleged illegal arrest of

plaintiff(Plaintiff's Initial Objection at ¶¶ 9 12). However, the defendants' motion is not directed to that aspect of her First Claim for Relief and therefore her argument is not now pertinent to this order as discussed below.

Plaintiff next appears to be arguing that certain events support her claim of use of excessive force and her objection to a finding of qualified immunity (Plaintiff's Initial Objection at ¶ 13). While this version of the events may be somewhat different than the events as described by the Magistrate Judge, the differences do not support a different result than that recommended by the Magistrate Judge.

In ¶¶ 14 and 15 of her Initial Objection plaintiff again appears to be arguing that her version of the events gives rise to a finding that there was a lack of probable cause to arrest her, but as noted above, the defendants are not seeking summary judgment the issue of the lawfulness of the arrest.

The remaining arguments in ¶¶ 16 through 34 of plaintiff's Initial Objection are essentially duplicative of arguments made in her Second Objection (Dkt.# 215) and are addressed as follows.

In her Second Objection plaintiff first objects to the Magistrate Judge's description of the elements of malicious prosecution in Colorado, urging that a "written statement" resulting in the bringing of a criminal case is not properly one of the elements (Plaintiff's Second Objection at ¶¶ 36–39).[3] The Magistrate Judge cited to the written statements of Defendants Blea and Sagan to support her Recommendation that the malicious prosecution claims against them not be dismissed; however, none of the Magistrate Judge's recommen-

dations for dismissal of the other defendants are based on the absence of a "written statement," but rather on the absence of personal participation (in the case of Defendants Whitman and Sandoval), and prosecutorial immunity (in the case of Defendant Wortham). Accordingly Plaintiff's Objection on this point is overruled.

Plaintiff next objects to the Recommendation that the malicious prosecution claims against Defendants Wortham and Ramsey be dismissed on the basis of prosecutorial immunity (Plaintiff's Objection at ¶¶ 40–42). Although plaintiff's Second Objection cites to various Colorado cases that recognize the possibility of a claim for malicious prosecution against prosecutors in a criminal case, those cases require a showing not only that the prosecution lacked probable cause, but also that the prosecutors were lacking a "good faith" belief that there was probable cause. Here, plaintiff argues a lack of probable cause to prosecute her, but makes no showing of a lack of a good faith belief by the prosecutors. Moreover, her Second Objection here appears to be making the argument regarding a lack of probable cause to prosecute plaintiff in connection with a case she describes as a prosecution of plaintiff for "illegal dumping" as a co-defendant with Lawrence Gomba (Plaintiff's Second Objection ¶ 42). However, plaintiff's complaint makes no mention of any prosecutorial activity by Defendants Wortham or Ramsey relating to "illegal dumping," nor did any of plaintiff's filings in opposition to the defendants' motion for partial summary judgment (see Dkt. ## 163, 180). Moreover, no issue regarding this alleged conduct was presented be-

---

**3.** Although the last numbered paragraph of plaintiff's Initial Objection was ¶ 35, the paragraphs of her Second Objection are numbered 36 through 46, and the pages are numbered 31–40 (Dkt.# 215). It appears plaintiff was intending the Second Objection to supplement the Initial Objection, and for ease of reference, the Court will refer to the paragraph numbers used by plaintiff in her Second Objection.

fore the Magistrate Judge, nor is it adequately presented before this Court.

Plaintiff's Objection cites to an attached "Exhibit S" (Plaintiff's Second Objection ¶ 40), which plaintiff describes as a "summons and complaint" issued to Mr. Gomba. But the copy filed with the Court is almost completely illegible, and to the extent the Court can decipher what appears on Exhibit S it does not refer to plaintiff at all except one incidental reference to her as a co-defendant in the "investigating/arresting officer's notes." Plaintiff also contends that the fact she was being prosecuted for "illegal dumping" is somehow shown by a transcript excerpt, apparently from a hearing held before Denver County Judge Mary Celeste, marked as Exhibit T to Plaintiff's Second Objection (id. at ¶ 41). It appears this one page transcript excerpt presents a fragment of an argument made by Defendant Ramsey in opposition to plaintiff's motion to dismiss the charges of interference with authority that were pending against her in Denver County Court. Defendant Ramsey is apparently arguing that the officers had reasonable cause to detain plaintiff at the time of the incidents described above. None of the arguments is indicative of malicious prosecution as argued by plaintiff. For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff next objects to the Magistrate Judge's finding that the second seizure on February 24, 2002 was an investigative stop, and that the defendant officers are entitled to qualified immunity since they could not be on notice that the amount of force used in such circumstances was unreasonable (Plaintiff's Second Objection ¶ 43). Plaintiff argues that the second seizure constituted a "second arrest" as she was deprived of her liberty (id.).

Plaintiff apparently misperceives the applicable law. If the so-called "second arrest" is in fact found to be an arrest, then

her claim of excessive force is on even weaker ground. If the second incident is found to be an unlawful arrest her excessive force claim is subsumed in the unlawful arrest claim. If the second incident is found to be a lawful arrest, then the amount of force permitted would be even greater than if it were an investigative stop, and the defendants would still be entitled to summary judgment.

Plaintiff further argues that Defendants Whitman and Sandoval are "vicariously liable for the aforementioned conduct of the Officers because they condone and encourage such behavior." (Plaintiff's Second Objection ¶ 43). Even if plaintiff had presented evidence to support this allegation, which she has not, the claims against Defendants Whitman and Sandoval are subject to dismissal. As the Magistrate Judge correctly stated, supervisors are not vicariously liable for alleged civil rights violations committed by subordinates, absent a showing of "personal participation" or exercise of control or direction, by the supervisor, or failure to supervise, none of which plaintiff has shown by admissible evidence (Recommendation at 1209). For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff's objection appearing at ¶ 44 of her Second Objection is not entirely comprehensible to the Court as it appears to argue that the Magistrate Judge made a finding as to whether the defendant officers acted in a lawful manner in arresting plaintiff, when in fact no such finding has yet been made. She also appears to reargue that Defendants Whitman and Sandoval can be vicariously liable, but this argument has previously been addressed. For these reasons, plaintiff's Second Objection on this point is overruled.

Plaintiff next objects to the dismissal of the outrageous conduct claim against Defendants Wortham and Ramsey on the ba-

sis of prosecutorial immunity (Plaintiff's Second Objection ¶ 45). As noted above, plaintiff has come forward with no evidence that these prosecutors lacked a good faith belief that there was probable cause to prosecute her. Thus, she fails to offer any basis on which to deny prosecutorial immunity to these defendants. Plaintiff's Second Objection on this point is overruled.

In ¶ 46 of her Second Objection, plaintiff again argues that the Magistrate Judge erred in recommending that her excessive force claims should be dismissed because, plaintiff states, what occurred on February 24, 2002 was "a full custodial arrest" and "not a lawful investigatory stop" as construed by the Magistrate Judge. As noted above, if both of the incidents of February 24, 2002 are found to be "arrests" rather than investigatory stops as plaintiff here urges, all of her claims for excessive force are subject to dismissal. If those arrests are found to be unlawful, the excessive force claims are subsumed in her unlawful arrest claims. If the arrests are found to be lawful, then the amount of force permitted is greater, and as the Magistrate Judge has found, the amount of force used by Defendants Sagan, Blea and Vasconcellos was reasonable, or they were not on notice that such degree of force was unreasonable in the context of an arrest, and therefore they are entitled to qualified immunity. Thus, plaintiff's persistence in arguing that the events of February 24, 2002 constitute arrests rather than investigative stops provides no ground for rejecting the Recommendation.

Finally, plaintiff objects to the Recommendation to the extent it recommends that the claims against Defendants Ramsey, Wortham, Webb, Hickenlooper, Sandoval, Whitman, the City and County of Denver, and the claims against Defendants Sagan, Blea and Vasconcellos, in their official capacities, be dismissed (Plaintiff's Second Objection ¶ 47). This objection sets forth no grounds as its basis. Moreover, the sentence in the Magistrate Judge's Recommendation where this language appears is merely a summary of the previous recommendations (see Recommendation at 1212 – 13) and does not constitute an independent conclusion.

In summary, the Court overrules all the objections made by plaintiff to the Recommendation of the Magistrate Judge in both her Initial Objection and Second Objection (Dkt. ## 21 and 215).

## E. REVIEW AND ANALYSIS OF DEFENDANTS' OBJECTIONS

Defendants Sagan, Blea and Vasconcellos first object to that part of the Recommendation of the Magistrate Judge to the extent it finds that the "first" seizure on February 24, 2002 could be characterized as an investigative stop, given plaintiff's repeated statements that such event constitutes an arrest (Defendants' Objection 1184 – 85).

Defendants also object to the Magistrate Judge's finding that the defendant police officers' conduct could be found to be unreasonable, even if the first seizure is characterized as an investigative stop (Defendants' Objection 1185 – 86).

Finally, defendants object to the finding that genuine material facts exists as to the veracity of the statements made by Defendants Blea and Sagan in support of plaintiff's arrest, so as to support a claim for malicious prosecution against them in violation of 42 U.S.C. § 1983 (Defendants' Objection 1187).

### 1. *Defendants' Objection as to the First Claim for Relief*

The Court begins its review of Defendants' Objection from the standpoint that plaintiff's First Claim for Relief for unlawful arrest and seizure, and her Fifth Claim

for Relief alleging outrageous conduct by the defendant officers, are not the subject of the Defendants' Motion for Partial Summary Judgment, and are currently set for a jury trial to commence on June 19, 2006. Thus the Magistrate Judge is correct in stating that the determination of whether the seizure (or seizures) of plaintiff were lawful will not be determined until evidence is presented at trial.

However, even if the Magistrate Judge is also correct in stating that a jury could also be called upon to determine whether the first incident on February 24, 2002 involving a seizure of plaintiff was an "arrest" or an "investigative stop." (Recommendation at 1203), the Court finds based that on the undisputed facts of this case, including plaintiff's own assertions, that the first incident must be viewed as an arrest as a matter of law.

Numerous decisions have addressed the differences between the various types of what have been called the three types of "police/citizen encounters," namely consensual encounters, investigative stops and arrests. *See e.g. Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir.2000) and cases cited therein. In *United States v. Cooper,* 733 F.2d 1360, 1363 (10th Cir.), *cert. denied sub nom., Threat v. United States,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984), the Tenth Circuit panel described an investigative, or *Terry [v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]-type stop, as a:

> brief, non-intrusive detention during a frisk for weapons or preliminary questioning.... This is considered a seizure of the person within the meaning of the Fourth Amendment, but need not be supported by probable cause. In order to justify an investigatory stop, the officer need have only specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.

■ The same decision described an arrest as a "highly intrusive or lengthy search or detention. An arrest is justified only when there is probable cause to believe that a person has committed or is committing a crime." *Id.* In *Cortez, supra,* the court found an arrest had occurred when the defendant police officers had grabbed the suspect by the arm, pulled him away from the doorway of his home, handcuffed him, and placed him in the back of a locked squad car. 438 F.3d at 994.

■ Given the identified criteria differentiating an arrest from an investigative stop, it appears to this Court that the events in this case plainly constitute an arrest. As noted above, the undisputed facts, or at least the claimed facts viewed in a light most favorable to the plaintiff, indicate that at some point during the incident plaintiff was "physically seized and dragged" out of her car (Complaint ¶ 33), surrounded by the defendant officers, and handcuffed with her wrists behind her *(id.* ¶ 34). She alleges she was dragged backwards by the handcuffs to the patrol car, told that when she was "ready to talk" she would be released otherwise she was "going to jail." *(Id.* at ¶¶ 35–36). She further alleges that after about ten minutes of being threatened, two of the defendant officers removed her from the patrol car and removed the handcuffs *(id.* at ¶ 37). She avers that one of officers then told her to sit on the curb until she "decided to tell what they wanted to hear." *Id.* at ¶ 39. Eventually plaintiff was told she was "free to after being humiliated in public view. *Id.* at ¶¶ 39–40.leave"

Given these assertions by plaintiff, which are similar to the facts in *Cortez,* cited above, as well as the other cases of arrests cited by *Cortez,* this Court finds that the first seizure must be characterized as an arrest, and could not reasonably be

found to be only an investigative stop. Moreover, as defendants point out in their Objection, plaintiff herself has consistently taken the position that she was the subject of an arrest, rather than an investigative stop. Indeed, as set forth above, even in her Second Objection to the Recommendation of the Magistrate Judge plaintiff continues to insist that she was twice arrested (Plaintiff's Second Objection ¶ 43).

As explained above, if the jury determines that the first arrest was unlawful, as plaintiff contends, her excessive force claim will be subsumed in that verdict. If the jury determines that the first arrest was lawful, then the question remains whether excessive force was used in effecting the arrest. As discussed above, this Court accepts the analysis of the Magistrate Judge, relying primarily on the *Cortez* decision, that the amount of force used against plaintiff in the context of an arrest was not unreasonable, or at least there was no clear precedent that would have put the defendants on notice that their conduct was unreasonable (Recommendation at 1203). Accordingly, having found that the first seizure of plaintiff was an arrest, the Court concludes that Defendants Sagan, Blea and Vasconcellos are entitled to summary judgment on that part of plaintiff's First Claim for Relief alleging the use of excessive force in effecting the "first arrest." The Court also accepts the Recommendation of the Magistrate Judge that these defendants are entitled to qualified immunity with respect to the second seizure, whether it is characterized as an arrest or investigative stop.

### 2. *Defendants' Objection as to the Fifth Claim for Relief*

■ Defendants Blea and Sagan do not disagree with the statement of law expressed by the Magistrate Judge that police officers may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor (Recom-

mendation at 1207; Defendants' Objection at 1187). However, these defendants argue that plaintiff did not submit sufficient evidence to show that they made false or misleading statements that led to plaintiff's prosecution, as the Magistrate Judge found.

The Magistrate Judge identified the following four statements attributable to Officers Blea and Sagan, apparently made on the criminal citation, which were material to the prosecution of plaintiff for interference with police authority: (1) when plaintiff was asked for identification, she responded that she did not have to give the officer anything and attempted to enter a vehicle to leave; (2) that plaintiff attempted to slam her car door on Officer Blea repeatedly; (3) that plaintiff began screaming and refused to provide identification; and (4) that after plaintiff was handcuffed, she continued to pull away from police yelling (Recommendation at 1207).

Although there was some uncertainty at the time of the Magistrate Judge's Recommendation as to whether these statements actually appeared on the criminal citation given the fact that an illegible copy was submitted by plaintiff, the Magistrate Judge accepted plaintiff's characterization of the statements as provided in her deposition testimony and interrogatory answers *(id.* at 1206 – 07). Defendants have now attached a legible copy of the citation and supporting notes as Exhibit A to their Objection, and the Court finds that the above statements do appear in the arresting officer's notes.

Defendants nonetheless argue summary judgment should be entered because plaintiff has not filed a substantive opposition to their motion, thereby conceding the facts as set forth by the defendants (Defen-

dants' Objection at 1187). While it is true that plaintiff did not submit substantive responses to the defendants' motion, the defendants themselves submitted exhibits in support of their motion which contained excerpts from plaintiff's deposition (Exhibit A to Defendants' Motion for Partial Summary Judgment) and plaintiff's Supplemental Interrogatory Answers (Exhibit B to Defendants' Motion for Partial Summary Judgment). The Magistrate Judge found that these documents contain statements by the plaintiff denying the veracity of at least some of the statements contained in the arresting officer's notes, and therefore putting at issue material facts as to whether untrue statements were made by the defendant officers in support of the prosecution of plaintiff(Recommendation at 1208).

The Court has reviewed portions of the deposition testimony of the plaintiff contained within Exhibit A to the Defendants' Motion, and a portion of the plaintiff's interrogatory answers contained within Exhibit B to the Defendants' Motion. The Court finds that plaintiff admitted in her deposition saying to the officer at the outset of the incident that she didn't have to provide identification, but shortly thereafter she did go to her car and get identification in the form of a driver's license (Exhibit A at 106). Plaintiff also expressly testified that she did not attempt to slam her car door on the officers (Exhibit A at 116). Although plaintiff was not asked whether she was screaming or yelling, she denied that prior to being handcuffed she was "flailing her arms around" (Exhibit A at 121), and she testified that after she was removed from her car she was just standing there (Exhibit A at 122). In her supplemental interrogatory answers, plaintiff denied that she was acting in a "dramatic [p]hysical manner" as stated in the Offi-

cer's notes (Exhibit B to the Defendants' Motion, Part I at 12).

■ Although these statements by plaintiff may not be emphatic denials of the officers' notes, they provide enough of a contradiction to the officers' statements to present a question for the jury to decide whether false or misleading statements by the officers contributed to the prosecution of the plaintiff. Moreover, plaintiff's deposition testimony also reveals an apparent omission in the officers' notes, namely that she did eventually produce identification. In *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir.), *cert. denied*, 519 U.S. 871, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996) the court stated that omitting information from an affidavit which, if included, would vitiate the probable cause to arrest might rise to a violation of the right of the arrested person. Here too, an omission of information by the officers from the notes that led to the prosecution could support a claim for malicious prosecution.

[7, 8] However, proof of false or misleading statements to a prosecutor alone would not be not enough to support a claim of common law malicious prosecution; there is also the requirement that the prosecution be brought maliciously. *See Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo.2004). In the context of a case such as this, the malice requirement could be met by evidence that the officers' statements were made with malice. Malice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime. *See Suchey v. Stiles*, 155 Colo. 363, 366, 394 P.2d 739, 741 (Colo.1964); C.J.I.Civ. 4th 17:4. As the Magistrate Judge correctly found, under Colorado law, malice may be inferred from a lack of probable cause. See *Montgom-*

*ery Ward & Co. v. Pherson,* 129 Colo. 502, 509, 272 P.2d 643, 646 (Colo.1954); C.J.I.-Civ. 4th 17:5. Here, the charge against plaintiff was ultimately dismissed for lack of probable cause. Thus a jury arguably may be able to infer from these facts that if the officers supplied false or misleading information to prosecutors, the element of malice is satisfied, taking into account "all the circumstances surrounding the filing and prosecution of the criminal case" against plaintiff. *See* C.J.I.-Civ. 4th 17:5.

Thus, the Court agrees with the Magistrate Judge that the plaintiff's claim for malicious prosecution against Officers Blea and Sagan should not be dismissed because there are unresolved issues of material fact that should be submitted to the jury.

**CONCLUSION**

For the reasons set forth above, the Recommendation Of the Magistrate Judge (Dkt.# 208) is adopted in part and declined in part.

Defendants' Motion for Partial Summary Judgment (Dkt.# 144) is therefore GRANTED in part and DENIED in part.

Plaintiff's Objections to the Recommendation (Dkt.## 211 and 215) are OVERRULED.

Defendants' Objections to the Recommendation (Dkt.# 210) are OVERRULED in part and SUSTAINED in part. The are sustained to the extent that Defendants Sagan, Blea and Vasconcellos are entitled to summary judgment on that part of plaintiff's First Claim for Relief alleging the use of excessive force in effecting the "first arrest." The Court also accepts the Recommendation of the Magistrate Judge that these defendants are entitled to qualified immunity with respect to the alleged use of excessive force with respect to the second seizure, regardless of whether it is characterized as an arrest or investigative stop, and GRANTS that portion of the defendants' motion.

Plaintiff's First Claim for Relief is DISMISSED with prejudice to the extent it alleges use of excessive force by Defendants Sagan, Blea and Vasconcellos, but remains pending as to the claims of unlawful arrest and seizure of plaintiff by those defendants.

Plaintiff's Second, Third and Sixth Claims for Relief are DISMISSED with prejudice in their entirety.

Plaintiff's Fourth Claim for Relief is DISMISSED with prejudice as against Defendants Wortham, Ramsey and Vasconcellos, but remains pending as against Defendants Sagan and Blea.

Plaintiff's Fifth Claim for Relief is DISMISSED as against all defendants other than Defendants Sagan and Blea and Vasconcellos.

Civil Action No. 03–cv–02633–PSF–PAC (Consolidated with Civil Action No. 04–cv–00319–PSF–PAC [1])

LILLIAN BARTON, Plaintiff(s),

v.

CITY AND COUNTY OF DENVER, OFFICER R. BLEY,[2] Badge No. 99006, OFFICER N. SAGEN, Badge, No.

---

1. Rudy Sandoval is named as a defendant in Civil Action No. 04–cv–00319–PSF–PAC, along with the defendants named in Civil Action No. 03–cv–02633–PSF–PAC.

2. "Officer Bley" is identified correctly as "Richard Blea" in Civil Action 04–cv–00319–PSF–PAC.

96021, OFFICER JOHN DOE,[3] MAYOR JOHN HICKENLOOPER, in his official capacity, WELLINGTON WEBB, as former Mayor, in his official capacity, GERALD R. WHITMAN, Chief of Police, City and County of Denver in his office capacity only, J. WALLACE WORTHAM, JR., former Denver City Attorney, in his official capacity only, CHRIS RAMSEY, former Denver Deputy City Attorney, in his official capacity only, Defendant(s).

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff asserts Fourth Amendment violations and state law tort claims arising from an incident involving plaintiff and the defendant Denver police officers.[4] The matter before the court is Defendants' Motion for Partial Summary Judgment [filed August 15, 2005]. The case was referred to the undersigned on January 12, 2004 to conduct pretrial proceedings and to issue recommendations for rulings on dispositive motions. The motion for partial summary judgment is fully briefed and the court has determined that oral argument would not be of material assistance.

## I.

The following facts are undisputed or are construed in plaintiff's favor for purposes of defendants' summary judgment motion. On February 24, 2003, plaintiff received a telephone call from Lawrence Gomba, her exhusband and house mate, asking her to pick him up at a Phillips 66 gas station at Sixth Avenue and Federal Boulevard and to give him a ride home to get a replacement tire for his truck. (Deposition of Lillian Barton, attached to Motion for Partial Summary Judgment ("MSJ") as Ex. A, at 23–24, 34–38, 65) Plaintiff drove to the gas station and saw Mr. Gomba's hydro seeder parked at the rear of the station, leaking a fluid onto the parking lot. (*Id.* at 54, 58) The liquid spill had a big green spot on it and was running down the adjacent street. (*Id.* at 59) Plaintiff observed two police cars parked at the station. (Barton Deposition, at 60) Defendant Sagan exited his police car after plaintiff approached him while looking for Gomba's truck and began to question plaintiff about the spill. (Plaintiff's Updated and Supplemented Responses to Defendants First Set of Interrogatories as of July 29, 2005 ("Plaintiff's Supplemental Responses"), attached to MSJ as Ex. B, at pp. 25–26; Barton Deposition, at 63–66, 77–78, 86) Plaintiff told Sagan that she thought the hydro seeder contained water, mulch, and seed. (Barton Deposition, at 86, 125) Sagan then questioned plaintiff about whether she had an ownership interest in Mr. Gomba's landscaping business. (Barton Deposition, at 92–93; Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff responded in the negative. (*Id.* at 98) Plaintiff answered all of Sagan's questions and then stated that she was going home. (Plaintiff's Supplemental Response to Interrogatory No. 10) As she turned to walk toward her car, defendants Sagan and Vasconcellos went into the cashier's booth. (*Id.*)

Officer Blea, who had just arrived at the scene, confronted plaintiff as she walked to her car. (Plaintiff's Supplemental Response to Interrogatory No. 10) Blea questioned plaintiff about the spill and whether

---

3. "Officer John Doe" is identified correctly as "Josh Vasconcellos" in Civil Action 04–cv–00319–PSF–PAC.

4. Plaintiff was represented by counsel until October 19, 2004 when the District Judge granted counsel's motion to withdraw.

it contained anything hazardous, such as fertilizer. *(Id.;* Barton Deposition, at 100–101) Plaintiff responded that she did not know if the spill contained fertilizer. (Barton Deposition, at 101–102) Officer Blea expressed concern about the contents of the spill because it was running down the street adjacent to the gas station, into a residential area, and older children were riding their bicycles through it. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition, at 103–04) When Officer Blea asked plaintiff for her identification, she initially refused, stating "I don't have to give you any identification," then went to her car to retrieve her driver's license. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition at 106) After Officer Blea returned her license and didn't say anything further, plaintiff told him that she was leaving and walked towards her car. (Barton Deposition, at 109, 112) Plaintiff got into her car and started it, but it stalled. (Barton Deposition, at 109, 112; Plaintiff's Supplemental Response to Interrogatory No. 10) Defendants Sagan and Vasconcellos then removed plaintiff from her vehicle, pulled her arms behind her back, applied handcuffs, pulled plaintiff by the handcuffs to the patrol car, and placed her in the back seat. (Plaintiff's Supplemental Response to Interrogatory No. 10; Barton Deposition, at 115, 121, 131) Plaintiff testified in her deposition that the defendants' actions in pulling her by the handcuffs hurt her wrists, because she had broken her right wrist in 1999 and her left wrist in 2000,[5] and was in casts for several months. (Barton Deposition, at 120–21, 153–156; Plaintiff's Supplemental Response to Interrogatory No. 4) Plaintiff told the officers that she was recuperating from a broken wrist and asked them "not to do

this." (Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff states that defendant Sagan told her, after placing her in the police car, that he was going to take her to jail if she didn't calm down, stop crying and tell them what they wanted to know. (Barton Deposition, at 134–135, 138)

Defendants removed plaintiff from the patrol car after approximately fifteen minutes and took off the handcuffs. (Barton Deposition, at 139) Plaintiff's wrists were "black and blue." *(Id.* at 140) The officers ordered her to sit on the curb for a while and to tell them "what they needed to know." *(Id.,* at 139) Eventually, the defendants told her she was free to leave and returned her car keys. *(Id.* at 139, 141) Plaintiff began walking towards her car when she was stopped by defendant Blea who asked to see her identification again. *(Id.* at 141142; Plaintiff's Supplemental Response to Interrogatory No. 10) Plaintiff showed Blea her recreation center identification, and he angrily demanded to see her driver's license. (Barton Deposition, at 142–43) Defendant Sagan took plaintiff's purse from her and Officers Sagan and Vasconcellos grabbed plaintiff's shoulders from behind and held her arms back for approximately one minute while defendant Blea searched the purse for plaintiff's driver's license. *(Id.* at 143, 149–150; Plaintiff's Supplemental Response to Interrogatory No. 10) Defendants then issued plaintiff a General Sessions Summons and Complaint for "Interference with Police Authority." (Barton Deposition, at 164; Affidavit of Chris Ramsay, attached to MSJ) The court dismissed the charge prior to trial for lack of probable cause. (Barton Deposition, at 164–65; Consolidated Compl., at ¶ 78)

---

**5.** It is unclear from the record whether plaintiff broke her left wrist in 2000 or in 2002, after the events challenged here.

Plaintiff does not have any permanent physical injuries as a result of defendants' use of force on February 24, 2002. (Barton Deposition, at 164) Plaintiff states that her wrists were "black and blue" for a period of time, she had small lacerations on her wrists, and that her back and arms were sore for a period of time. (Plaintiff's Supplemental Answer to Interrogatory No. 6)

Plaintiff asserts the following claims in her Consolidated Complaint and Jury Demand filed on March 15, 2004:(1) that defendants Sagan, Blea and Vasconcellos illegally arrested the plaintiff, illegally searched her purse, and used excessive force against her during the arrest and search, in violation of the Fourth Amendment to the United States Constitution; (2) that she was prosecuted maliciously for violating Section 38–31 of the Denver Revised Municipal Code, "Interference with Police Authority," based on false and misleading statements made by defendants Blea, Sagan and Vasconcellos and that defendant Wortham, the Denver City Attorney, defendant Sandoval, the Commander of District 4 of the Denver Police Department, and defendant Whitman, the Denver Chief of Police, failed to dismiss the charge after it became obvious to them that the prosecution was baseless, in violation of the Fourth Amendment; (3) that defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey have established a municipal policy of covering up police misconduct by refusing to hold police officers responsible for illegal searches, seizures, and the use of excessive force, and, by maliciously prosecuting persons mistreated by police officers; (4) that defendant Wortham and defendant Ramsey, the Denver Assistant City Attorney, are liable under state law for maliciously prosecuting the plaintiff; (5) that the defendants' conduct, except for defendant Hickenlooper, in arresting, searching and "assaulting" the plaintiff and in prosecuting her without probable cause to believe that a crime had been committed, was extreme and outrageous, and constituted the intentional infliction of emotional distress; and (7) that plaintiff is entitled to an injunction to prevent the defendants from engaging in similar misconduct against other citizens in the future.

## II.

Defendants have moved for summary judgment on the majority of plaintiff's claims, with the exception of plaintiff's § 1983 Fourth Amendment claims of unlawful arrest and unlawful search against defendants Sagan, Blea and Vasconcellos, and plaintiff's state law outrageous conduct claim against those defendants.

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is appropriate under Fed. R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum,* 858 F.2d 610, 613 (10th Cir.1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.,* which 60 F.3d 1486, 1490 (10th Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Speculation, supposition and unsupported factual allegations will not an issue of material fact

necessitating trial. *Handy v. Price*, 996 F.2d 1064, 1068 (10th Cir.1993).

The individual defendants have asserted the qualified immunity defense in response to plaintiff's constitutional claims against them in their individual capacities for monetary relief. Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right. *See Smith v. Cochran*, 339 F.3d 1205,1211 (10th Cir.2003)(internal citation omitted). If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity. *Smith*, 339 F.3d at 1211. f the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir.2001)(internal quotation omitted).

A law is "clearly established" for purposes of qualified immunity if there is a Supreme Court or Tenth Circuit decision on point, or if "the clearly established weight of authority from other circuits [has] found the law to be as the plaintiff maintains." *Johnson v. Martin*, 195 F.3d 1208, 1216 (10th Cir.1999)(quoting *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir.1999))(internal citation omitted). The clearly established law inquiry focuses on whether the public official should reasonably have known, in light of existing law, that his conduct was unlawful. *Johnson*, 195 F.3d at 1216; *accord Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (stating that for the law to be clearly established, it must "be clear to a reasonable [prison administrator] that his conduct was unlawful in the situation he confronted."); *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)("the salient question ... is whether the state of the law [at the relevant time] gave [defendants] fair warning that their alleged [conduct] was unconstitutional.")

Plaintiff has not addressed the merits of defendants' arguments as raised in their motion for partial summary judgment. Instead, plaintiff objects to the court's consideration of the motion on the ground that the copy of plaintiff's deposition transcript attached to defendants' motion is not admissible evidence because plaintiff had not reviewed or signed the deposition at the time the copy was filed with the court.

Importantly, although plaintiff complains that copies of her deposition transcript were filed with the court before she had an opportunity to review the transcript for accuracy, *see* Fed.R.Civ.P. 30(e), she does not claim that any of the testimony recorded was inaccurate, nor has plaintiff since advised the court of any inaccuracies. Accordingly, the court may rely on the copy of plaintiff's deposition transcript

in considering defendants' motion for partial summary judgment.[6]

■ Even though plaintiff has declined to respond to the merits, I nonetheless must determine whether the evidence of record establishes that defendants are entitled to judgment as a matter of law on those of plaintiff's claims which defendants address in their motion. *See* Fed.R.Civ.P. 56(c); *Murray v. City of Tahlequah, Okl.,* 312 F.3d 1196, 1200 (10th Cir.2002)(holding that *pro se* plaintiff's failure to file timely response to defendant's summary judgment motion constituted plaintiff's confession of facts asserted by defendant and properly supported in the summary judgment motion, but "did not relieve the court of its duty to make the specific determinations required by Fed.R.Civ.P. 56(c)")

### III.

#### A. *Fourth Amendment Excessive Force Claim*

Defendants move for summary judgment on plaintiff's claim that defendants Sagan, Blea and Vasconcellos used excessive force against her during two "arrests."

In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." The reasonableness of a particular use of force must be assessed based on the totality of the circumstances, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citations and quotation marks omitted). In making an arrest, officers may "use some degree of physical coercion or threat thereof to effect it." *Id.*

■ Plaintiff claims that the defendant police officers used excessive force against her when she was twice "arrested" on February 24, 2002. The first alleged arrest occurred when the defendant police officers removed plaintiff from her vehicle, handcuffed her, and placed her in the back of the patrol car.[7] Plaintiff asserts that a second "arrest" occurred when police officers grabbed her shoulders from behind and restrained her while defendant Blea retrieved plaintiff's driver's license from inside her purse. (Barton Deposition, at 198–99)

■ The Tenth Circuit recognizes three types of police/citizen encounters: consensual encounters (which are not seizures within the meaning of the Fourth Amendment); investigative stops; and arrests. *Oliver v. Woods,* 209 F.3d 1179,

---

6. Plaintiff also argues that defendants should have submitted the original deposition transcript to the court, instead of a copy. However, the original deposition transcript must remain in a sealed envelope for use at trial. *See* Fed.R.Civ.P. 30(f).

7. The parties apparently agree, as does the undersigned, that defendants' conduct constituted a "seizure" of plaintiff, thereby triggering the protections of the Fourth Amendment. A "seizure" occurs when an officer's show of authority during a police·citizen encounter succeeds in restraining the citizen. *See Latta v. Keryte,* 118 F.3d 693, 698 (10th Cir.1997)(internal citation omitted); *see, also, United States v. Harris,* 313 F.3d 1228, 1234 (10th Cir.2002) ("Ultimately, a seizure requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority")(citing *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).

1186 (10th Cir.2000). The nature of a police seizure is relevant to whether an officer's use of force against a citizen during the course of the seizure was lawful. "[P]olice have historically been able to use more force in making an arrest than in effecting an investigative detention." *Cortez v. McCauley*, 438 F.3d 980, 995 (10th Cir.2006). Moreover, if an arrest or investigative detention was unlawful, a plaintiff may not recover separately on an excessive force claim. *Id.* at 996. This is so because "[a]ny force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful." *Id.* Accordingly, when an individual asserts an excessive force claim against police officers in connection with a "seizure," the court first must determine whether the seizure was a lawful arrest or lawful investigative detention; if lawful, the court may proceed to analyze the merits of the excessive force claim. Conversely, if the arrest or investigative detention was unlawful, the excessive force claim cannot be maintained as a separate claim for relief. *Id.*

The jury will decide whether the police seizures plaintiff challenges were lawful. I consider below whether plaintiff's evidence is sufficient to try her excessive force claims to the jury, based on the potential outcomes of her unlawful seizure claim.

### 1. *Excessive force (first seizure) in context of an arrest*

I first consider plaintiff's claim that she was "arrested" when defendants removed her from her vehicle, handcuffed her, and placed her in the back seat of a police car. Handcuffing an individual and placing her in a police car are indicative of an arrest. *See Cortez*, 438 F.3d at 989, 994–95 (citing cases). An arrest must be supported by probable cause to comport with the Fourth Amendment. *See Michigan v. Summers*, 452 U.S. 692, 700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

Plaintiff testified in her deposition that the criminal citation she received for "Interference with Police Authority" was dismissed by the state court for lack of probable cause. (Barton Deposition, at 164–65) There is no evidence in the court's summary record to the contrary. Accordingly, if plaintiff succeeds at trial on her unlawful arrest claim, she cannot maintain a separate claim for unlawful excessive force based on the same facts. *Cortez*, 438 F.3d at 996. However, in the event there is evidence presented at trial from which the jury could reasonably conclude that there was probable cause to arrest plaintiff, I consider whether defendants are entitled to qualified immunity on plaintiff's excessive force claim in the context of a lawful arrest.

As discussed previously, officers are entitled to use some degree of force in an arrest supported by probable cause. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Plaintiff effecting states that defendants Sagan and Vasconcellos physically removed her from her vehicle, pulled both of her arms behind her and handcuffed her, that she told them "not to do this" because she was recuperating from a broken wrist, and that the defendants then "pulled [her] by the handcuffs" to the patrol car and "shoved" her into the back of the patrol car where she "landed on [her] hands and injured [her] wrists." (Plaintiff's Supplemental Response to Interrogatory No. 10; *see, also, Barton Deposition*, at 120–121, 132–33) Defendants removed her from the police car after approximately fifteen minutes and released the handcuffs. (*Barton Deposition*, at 139)

Plaintiff suffered "black and blue wrists" for a period of time after the incident and had small lacerations on her wrists from the handcuffs. (Plaintiff's Supplemental Response to Interrogatory No. 6) Plaintiff's injuries, however, did not require

medical attention. (Barton Deposition, at 157–161) Plaintiff further testified that the officers did not hurt her when they removed her from her vehicle. (Barton Deposition, at 115)

■ Whether plaintiff suffered only minor injuries as a result of the defendants' use of force is not determinative. A lack of a physical injury does not preclude an excessive force claim, *see Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir.2001), but is instead one factor for the court to consider in the totality of the circumstances analysis. *Id.* at 1195 and n. 16.

In *Cortez,* police officers seized the male plaintiff in the entryway of his home, handcuffed him, and placed him in the back of a patrol car. 438 F.3d at 987. Although the plaintiff advised the officers that the handcuffs were too tight and were causing him pain, the officers did not loosen the handcuffs. *Id.* The handcuffing left red marks on plaintiff's wrists that were visible for several days. *Id.* at 997. The Tenth Circuit concluded that because there was nothing problematic about the manner in which plaintiff was handcuffed and placed in the police car, the mere application of tight handcuffs without resultant physical injury was insufficient to establish a constitutional violation. *Id.* at 997–98. The court thus held that if the male plaintiff was lawfully arrested, he had failed to submit sufficient evidence to show that the defendants' use of force against him was objectively unreasonable, in violation of the Fourth Amendment. *Id.* at 998.

Here, plaintiff's evidence does not demonstrate that defendants' use of force was substantial or abusive. Plaintiff does not complain about the manner in which she was removed from her vehicle, nor does she allege any other rough treatment at the hands of the defendants which is inconsistent with a standard handcuffing procedure and arrest. The crux of plaintiff's claim is that she told the officers not to handcuff her, and not to pull her by the handcuffs to the police car, because she had a prior wrist injury. Assuming that plaintiff was not attempting to flee, the handcuffing may be sufficient to support a claim of excessive force in the context of a lawful arrest, because there is no evidence that plaintiff a risk to officer safety. *See Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993)("An excessive use of force claim could be premised on [the officer's] handcuffing [the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him.") However, the police officers are nonetheless entitled to qualified immunity if their conduct did not violate clearly established law. *Saucier,* 533 U.S. at 201–202, 121 S.Ct. 2151.

■ Neither the Supreme Court, nor the Tenth Circuit has held that a misdemeanor offender who does not resist or attempt to flee,[8] has a right not to be handcuffed in the course of an arrest. The Tenth Circuit has held, in the context of a substantive due process analysis, that handcuffing an arrestee too tightly and causing pain, with no evidence of "contusions, lacerations, or damage to the bones or nerves of her wrists" did not constitute excessive force. *Hannula v. Lakewood,* 907 F.2d 129, 132 (10th Cir.1990)(decided prior to *Graham).*[9] Case law in other

---

8. Although it appears that there may be a dispute at trial about whether plaintiff was attempting to flee when the defendants handcuffed her, I construe the evidence in plaintiff's favor on summary judgment.

9. The Tenth Circuit has held in two unpublished dispositions that where force used by police officers in effecting a lawful arrest was not substantial or abusive, the force is not unlawful merely because the arrestee advises

circuits is not consistent. The Eleventh Circuit has held that the painful handcuffing of arrestees with resultant minor injuries does not constitute excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1258 and n. 4 (11th Cir.2000)(holding that officer who, during the course of a lawful arrest, grabbed arrestee and shoved him a few feet against a vehicle, pushed his knee into the arrestee's back and the arrestee's head against the van, and placed arrestee in handcuffs, with resultant minor bruising that disappeared without treatment, was entitled to qualified immunity on excessive force claim). Conversely, the Ninth Circuit has denied summary judgment to a police officer on an excessive force claim where the officer locked the handcuffs on the plaintiff's wrists so tightly that plaintiff suffered pain and bruises and officer refused, without justification, to loosen the handcuffs after plaintiff complained about pain. *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir.1993). The Fifth and Eighth Circuits have held that painful handcuffing accompanied by de minimis injuries will not support an excessive force claim. *See Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir.2001)(painful handcuffing that resulted in swollen wrist); *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir.1990)(holding that painful handcuffing without evidence of permanent resulting injury is insufficient to show excessive force).

Accordingly, even though there is authority from the Sixth and Ninth Circuits which supports plaintiff's claim here, other Circuit authority is to the contrary. Plaintiff thus cannot show that the "clearly established weight of authority from other circuits [has] found the law to be as the plaintiff maintains." *Johnson*, 195 F.3d at 1216.

I recommend finding that defendants are entitled to summary judgment on plaintiff's excessive force claim to the extent the use of force occurred during a lawful arrest. Even if defendants provide evidence at trial from which the jury could find that plaintiff was lawfully arrested, plaintiff cannot succeed on her excessive force claim because existing law would not have placed the defendants on notice that their conduct was unreasonable under the circumstances. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

I further recommend granting summary judgment to defendants on plaintiff's claim that excessive force was used against her in the course of an unlawful arrest because if plaintiff succeeds at trial on her unlawful arrest claim, she cannot maintain a separate claim for excessive force based on the same facts. *Cortez*, 438 F.3d at 996.

2. *Excessive force (first seizure) in context of an investigatory detention*

The record also contains evidence from which the jury could conclude that plaintiff was seized during the course of an investigative detention.

■■■ "A police officer who observes suspicious circumstances may stop an individual briefly to investigate the circumstances provoking suspicion." *Latta*, 118 F.3d at 698 (citing *Terry v. Ohio*, 392 U.S.

---

the police officer of a prior injury which may be exacerbated by the handcuffing. *See Wells v. State of Oklahoma ex rel. Dep't of Safety*, 97 F.3d 1465, 1996 WL 557722 (10th Cir.1996)(Unpublished Disposition); *Morreale v. City of Cripple Creek*, 113 F.3d 1246 (10th Cir.1997) (Unpublished Disposition). I cannot rely on unpublished Tenth Circuit decisions in the qualified immunity analysis, however. *See* 10th Cir. Rule 36.3 (stating that unpublished orders and judgments are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel).

Copies of the *Wells* and *Morreale* decisions are attached to the Recommendation.

1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officers at the time"); *Michigan,* 452 U.S. at 699, 101 S.Ct. 2587 (recognizing that "some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity").

The record shows that the police officers were investigating the source and contents of a spill on the gas station property where they stopped plaintiff for questioning. Because the jury could reasonably infer from the evidence of record that plaintiff's seizure was a lawful investigative detention, I consider first whether the force used by the defendant police officers was reasonable under the totality of the circumstances and second whether the defendants are entitled to qualified immunity.

 Police officers may " 'take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of a *Terry* stop.'" *United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir.1993)(quoting *United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). An officer may grab a citizen by the arm when performing an investigative detention without running afoul of the Fourth Amendment. *Terry,* 392 U.S. at 7, 88 S.Ct. 1868. In *Perdue,* the Tenth Circuit held that police may use handcuffs during a *Terry* stop without elevating an investigatory stop into an arrest if the "circumstances reasonably indicate that the suspects are armed and dangerous." *Perdue,* 8 F.3d at 1463 (citing cases from other circuits upholding use of handcuffs where there is a risk to officer safety, or the individual has fled or has attempted to flee).

Here, plaintiff testified to the following relevant facts in her deposition: after plaintiff arrived at the gas station and began looking around for Mr. Gomba's truck, defendant Sagan questioned her about the contents of the spill and asked whether plaintiff had an ownership interest in Mr. Gomba's landscaping company. When Sagan asked plaintiff about Mr. Gomba's whereabouts at that time, plaintiff responded that she didn't know where Gomba was, but that he would return to the gas station because the hydro seeder was "an expensive piece of equipment." Sagan then asked plaintiff for Gomba's telephone number and she responded that Gomba's personal and business phone number was printed on the front of the hyrdro seeder. At some point, plaintiff told Sagan that she had given him all the information she had and that she was leaving. As plaintiff began walking to her car, she was confronted by Officer Blea, who had just arrived at the scene. Blea then questioned plaintiff about the contents of the spill and asked her who was responsible. Blea also asked plaintiff for her identification. Plaintiff initially refused, but then retrieved her driver's license from her vehicle and handed it to Blea. After Blea returned the license to plaintiff and did not say anything further, plaintiff told Blea that she was leaving and walked to her car. Plaintiff got into her car and started it, but it stalled. Officers Sagan and Vasconcellos then removed plaintiff from her car, handcuffed her, placed her in the back of a police car for about fifteen minutes, and told her that they would take her to jail if she didn't stop crying. (Barton Deposition, at 91–115; 120–21,130–134,

139) Plaintiff also testified that she did not try to slam her car door repeatedly on Officer Blea's legs, as stated in the police report. (Barton Deposition, at 116–17)

The defendant police officers did not submit affidavits in support of their summary judgment motion, nor did they submit the police reports. There is no evidence in the record that any of the officers ordered plaintiff to "stop" as she walked towards her car, or told her specifically that she was not free to leave. The record also lacks any evidence that plaintiff posed a threat to the police officers or others.

I recommend finding that genuine issues of material fact exist about whether defendants' actions in removing plaintiff from her car, handcuffing her, and placing her in the back of a police car constituted an unreasonable use of force in the context of a possibly lawful investigative detention. A reasonable fact finder could conclude from plaintiff's evidence that the officers' actions were unreasonable because plaintiff did not attempt to flee, nor did she pose an immediate threat to the safety of the officers or others. *See Cortez*, 438 F.3d at 999–1000 (affirming trial court's order denying summary judgment and qualified immunity to police officers on the male plaintiff's claim that officers' actions in handcuffing plaintiff and placing him in police car during the course of a lawful investigatory detention constituted excessive force where there was no evidence in record that plaintiff posed an immediate threat to the safety of the officers or others, or that plaintiff attempted to flee). I further recommend finding that the defendant police officers are not entitled to qualified immunity at this time because the right to be free from excessive force during an investigative detention was clearly established in *Perdue* and *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1031–32 (10th Cir.1997)(holding that officers may take actions reasonable necessary to

protect their personal safety and to maintain the status quo during the course of a Terry stop without converting an investigatory stop into an arrest that must be justified by probable cause)(citing Perdue). *See Cortez*, 438 F.3d at 1000.

I recommend denying defendants' motion for summary judgment on plaintiff's claim that the police officer defendants used excessive force against her when they physically removed her from her vehicle, handcuffed her, and placed her in a patrol car, to the extent the challenged use of force occurred during a lawful investigatory detention. I further recommend finding that the defendants are entitled to summary judgment on plaintiff's excessive force claim to the extent the claim is predicated on an unlawful investigatory detention. *See Cortez*, 438 F.3d at 996.

3. *Excessive force during the second "seizure"*

Plaintiff also claims that she was "arrested" when two of the defendant police officers grabbed her shoulders from behind and held her arms back, thereby restraining plaintiff for a minute or so while defendant Blea searched plaintiff's purse for her driver's license. The police conduct plaintiff describes constitutes a "seizure," *see Terry*, 392 U.S. at 19, 88 S.Ct. 1868, but is not characteristic of an "arrest" because plaintiff was not handcuffed and placed in a police car, or transported involuntarily to the police station. *See Cortez*, 438 F.3d at 989, 994–95 (citing cases).

▮ A reasonable jury could conclude that the second seizure of plaintiff was part of a lawful investigatory detention. A police officer may grab an individual's arm during the course of a lawful investigatory stop without elevating a Terry stop to an arrest that must be justified by probable cause. *Terry*, 392 U.S. at 7, 28, 88 S.Ct.

1868. However, even if the force used against plaintiff was unreasonable, defendants are entitled to qualified immunity because the law at that time would not have placed defendants on notice that their actions in grabbing plaintiff's arms and restraining them behind her back for one minute were unlawful. *See Cortez,* 438 F.3d 980, at 1001 (holding that even if police officers used excessive force against female plaintiff during the course of a lawful investigatory detention when officer entered her home in the middle of the night, seized her by the arm and physically escorted her to the patrol car where she was questioned, defendants were entitled to qualified immunity because the law in effect in May 2001 did not place the officers on notice that their conduct was clearly unlawful)(citing *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151).

Accordingly, defendants' motion for summary judgment on the basis of qualified immunity should be granted on plaintiff's claim of excessive force arising from the actions of physically restraining plaintiff's arms while defendant Blea searched plaintiff's purse for her driver's license. If defendants' use of force occurred during a lawful investigatory stop or arrest,[10] it did not violate clearly established law and the defendants are entitled to qualified immunity. If the use of force occurred during an unlawful investigatory stop or arrest, plaintiff cannot maintain a separate claim for relief for excessive force. *Cortez,* 438 F.3d 980, 996.

### B. *§ 1983 Malicious Prosecution Claim*

Defendants move for summary judgment on the entirety of plaintiff's malicious prosecution claim under 42 U.S.C. § 1983.

Plaintiff claims that she was prosecuted maliciously for violating Section 38–31 of the Denver Revised Municipal Code, "Interference with Police Authority," based on false and misleading statements made by the defendant police officers and that defendant Wortham, the Denver City Attorney, defendant Sandoval, the Commander of District 4 of the Denver Police Department, and defendant Whitman, the Denver Chief of Police, failed to dismiss the charge after it became obvious to them that there was no basis for it, in violation of her Fourth Amendment rights.

■ "[S]tate law provides the starting point for analyzing a Fourth Amendment claim for malicious prosecution under § 1983." *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs,* 263 F.3d 1151, 1154 (10th Cir.2001)(citing *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.1996)). However, the plaintiff must ultimately show that her Fourth Amendment right to be free from an unreasonable seizure has been violated. *Taylor,* 82 F.3d at 1561; *Wolford v. Lasater,* 78 F.3d 484, 489–90 (10th Cir.1996)(citing *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(holding that malicious criminal prosecution, if actionable in constitutional law, is governed by the Fourth Amendment rather than the Fourteenth Amendment Substantive Due Process Clause)).

The lawfulness of defendants' seizures of plaintiff on February 24, 2002 will be decided at trial. Assuming that plaintiff can prove a violation of her Fourth Amendment rights, I address whether the evidence in the summary judgment record is sufficient to satisfy plaintiff's burden on the other elements of her § 1983 malicious prosecution claim.

---

**10.** Even if the second "seizure" of plaintiff could be construed as akin to an "arrest," the defendants are entitled to qualified immunity because a greater use of force is justified in effecting an arrest supported by probable cause than in making a *Terry* stop. *Cortez,* 438 F.3d 980, 995.

In Colorado, the elements of a malicious prosecution claim are that: (1) A criminal case was brought against the plaintiff; (2) the criminal case was brought as a result of a written statement made by the defendant; (3) the criminal case ended in favor of the plaintiff; (4) the defendant's statement against the plaintiff was made without probable cause; (5) the defendant's statement against the plaintiff was motivated by malice towards the plaintiff; and (6) as a result of the criminal case, the plaintiff had damages. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo.2004)(citing CO–JICIV 17:1 (4th ed)); *Montgomery Ward & Co. v. Pherson*, 272 P.2d 643 (Colo.1954).

I first address plaintiff's claim against defendants Blea, Sagan and Vasconcellos. Generally, a police officer cannot be sued for malicious prosecution under § 1983 because the "chain of causation is broken" between the arrest and the actual prosecution. *Taylor*, 82 F.3d at 1564 (quoting and citing *Reed v. City of Chicago*, 77 F.3d 1049, 1054 (7th Cir.1996)) However, officers may be held liable if they conceal and misrepresent material facts to the District Attorney. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir.2004); *Taylor*, 82 F.3d at 1563–64 (citing *Reed*, 77 F.3d at 1054).

Plaintiff avers that Officers Blea and Sagan made the following statements on her criminal citation which were false or misleading: that "unknown" suspects had dumped "10,000 gallons of an unknown green Fiberglass substance;" their description of the spill from the hydro seeder as "10,000 gallons of unknown fiberglass substance"; that when Blea asked plaintiff for her identification, plaintiff responded that she did not "have to give him anything and attempted to enter a vehicle to leave;" that plaintiff attempted to slam her car door on Officer Blea repeatedly; that plaintiff began screaming and refused to provide identification; that after plaintiff was handcuffed, she "continued to pull away from police yelling." (Plaintiff's Supplemental Answer to Interrogatory No. 11; Barton Deposition, at 202, 210–215)

The probable cause statement on the copy of the General Sessions Summons and Complaint issued to plaintiff for "Interference with Police Authority" contained in the court's record is not legible. Moreover, the officer's handwritten notes which plaintiff states were on the back of the citation are not part of the court's record. Defendants do not dispute plaintiff's deposition testimony about the content of defendants Blea and Sagan's written statements in support of the criminal citation. Accordingly, for purposes of summary judgment, I assume that plaintiff's representations about Officers Blea's and Sagan's written statements are accurate.

With regard to the first two allegedly false statements, plaintiff states that she told the officers that the hyrdro seeder belonged to her "husband" or "ex-husband," but it is not clear that she gave the officers his name. Plaintiff also testified in her deposition that she told the officers what she thought was contained in the spilled substance, but admitted that she did not know for certain. Accordingly, defendant Blea's statement that the suspect was "unknown" and his description of the substance as "an unknown fiberglass substance," which was admittedly based on his observations and lack of definite knowledge about the actual contents, cannot be deemed false or misleading statements. However, Blea and Sagan's remaining statements, if false or misleading, as the plaintiff avers in her deposition testimony and in her supplemental responses to defendants' interrogatories, are material to the citation for "Interference with Police Authority." Accordingly, I recommend

·finding that genuine issues of material fact remain about the veracity of Officers Blea's and Sagan's written statements.

I recommend finding that plaintiff has satisfied the first two elements of malicious prosecution under Colorado law because the record shows that a criminal case was filed against her based on the written statements of Blea and Sagan. (Affidavit of Chris Ramsay, attached to MSJ, at ¶ 3) Plaintiff has also satisfied the third and fourth elements based on her uncontroverted deposition testimony that the court dismissed the criminal complaint for lack of probable cause.

■ I next consider whether there is evidence in record tending to show that the defendants acted with malice in prosecuting the plaintiff.[11] Under Colorado law, " 'malice' is any motive other than a desire to bring an offender to justice," and "may be inferred from a want of probable cause." *Pherson,* 272 P.2d at 646.

In support of her allegation that defendants acted with malice, plaintiff avers that the officers continued to contend that the spill contained a hazardous substance, even though plaintiff had already told them that the contents were harmless; that even though plaintiff answered all the officers' questions, defendant Sagan continued to insist that she tell them what they wanted to know; that after defendants handcuffed plaintiff and she began to cry, defendant Sagan threatened to put her in jail if she

didn't stop crying; and, that defendant Sagan cited plaintiff for police interference after she threatened to sue the police officers.[12] (Plaintiff's Supplemental Response to Interrogatory No. 12; Barton Deposition, at 138142)

Even if plaintiff's facts maybe insufficient to prove malice, I recommend finding that the issue of malice is for the jury to decide. *See Pherson,* 272 P.2d at 646 (recognizing that malice can be inferred from a lack of probable cause).

Finally, plaintiff has stated facts to show that she incurred damages as a result of the prosecution. (Plaintiff's Supplemental Response to Interrogatory No. 13)

■ Accordingly, I recommend finding that genuine issues of material fact preclude the entry of summary judgment in defendants' favor on plaintiff's § 1983 malicious prosecution claim against defendants Blea and Sagan. Those defendants are not entitled to qualified immunity because, in *Taylor v. Meacham,* the law was clearly established that a police officer who makes false statements in a police report may be held liable in a § 1983 malicious prosecution action. *See, also, Robinson v. Maruffi,* 895 F.2d 649, 655–56 (10th Cir.1990)(holding that defendant police officers could be held liable for malicious prosecution where they "purposefully concealed and misrepresented material facts

---

**11.** The Tenth Circuit has not squarely addressed whether malice is an element of a § 1983 malicious prosecution claim. See *Pierce,* 359 F.3d at 1297 n. 12. The parties assume that proof of malice is necessary to sustain plaintiff's § 1983 claim, so I will do the same for purposes of this Recommendation.

**12.** Plaintiff also states that defendants' malice is evidenced by the fact that defendants cited her for interference with police authority even though they knew that Mr. Gomba would

come back to the station to clean up the spill, based on Gomba's statements to one of the gas station employees. (Plaintiff's Supplemental Response to Interrogatory No. 12) However, plaintiff's statement about what Gomba told a gas station employee is hearsay and is therefore not competent evidence in a summary judgment proceeding. *See Jaramillo v. Colorado Judicial Dep't,* 427 F.3d 1303, 1314 (10th Cir.2005)("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.")

to the district attorney which may have influenced his decision to prosecute").

I further recommend, however, that summary judgment be entered in favor of defendant Officer Vasconcellos because there is no evidence in the record that he made any false statements in support of the criminal citation issued to plaintiff.[13] *(See Barton Deposition,* at 201)

Defendants next argue that defendant Denver City Attorney Wortham is entitled to prosecutorial immunity for his actions in prosecuting the municipal violation charge.

██ A government prosecutor enjoys absolute immunity from damages under § 1983 when he "initiat[es] a prosecution and ... present[s] the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *see, also, Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.") Plaintiff's § 1983 malicious prosecution claim against defendant Wortham in his individual capacity should be dismissed because he is immune from damages liability under § 1983.[14]

Defendants next argue that the § 1983 malicious prosecution claim against defendants Whitman, the Denver Chief of Police, and Sandoval, the Commander of District 4, should be dismissed because

plaintiff has not proffered any evidence to show that those defendants personally participated in the prosecution of plaintiff on the police interference charge.

██ Individual liability under 42 U.S.C. § 1983 must be based on the individual's personal participation in the alleged constitutional deprivation. *See Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir.1976); *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996). To hold a supervisor of a tortfeasor liable under § 1983, the plaintiff must show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's' personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir.1997)(quoting *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir.1988)(internal citation omitted)); *see, also, Harrington,* 268 F.3d at 1187 (citing *Meade).*

██ An individual "who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings." *Pierce,* 359 F.3d at 1292 (quoting *Restatement (Second) of Torts* § 655 (1977)). not have any evidence that Commander Sandoval or police chief Whitman somehow assisted in the prosecution of the criminal citation. (Barton Deposition, at

---

**13.** Plaintiff also states that two of the officers testified at the preliminary hearing that she was an accessory to a crime of dumping phosphoric acid and that she was charged with that crime on the back of the Complaint issued to Mr. Gomba for "unlawful dumping." (Barton Deposition, at 189; Plaintiff's Supplemental Response to Interrogatory No. 10; General Session Summons and Complaint attached to MSJ) However, there is no evidence that plaintiff was ever prosecuted on a charge of conspiring to cover up a phosphoric acid

spill. Accordingly, I do not consider that allegation in making a recommendation on plaintiff's § 1983 malicious prosecution claim.

**14.** Although plaintiff did not assert her § 1983 malicious prosecution claim against defendant Ramsey, the Denver Assistant City Attorney, he is also entitled to prosecutorial immunity for prosecuting the criminal citation against plaintiff.

216) Commander Sandoval did not know about the charge against plaintiff until after it was dismissed. (Barton Deposition, at 175) Plaintiff's claim against defendant Whitman is based on Whitman's refusal to discipline the defendant police officers after plaintiff filed a complaint with Internal Affairs. *(Id.* at 217–218) Plaintiff's evidence is insufficient to support a fact finder's reasonable inference that defendants Sandoval and Whitman personally participated in the alleged malicious prosecution. Accordingly, the claim against those defendants should be dismissed.

**C. § 1983 Claim Against the City and County of Denver for Unconstitutional Policies**

 Plaintiff claims that defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey have established a municipal policy of covering up police misconduct by refusing to hold police officers responsible for illegal searches, seizures and the use of excessive force, and, by maliciously prosecuting persons mistreated by police officers.

Plaintiff's claim against the defendants in their official capacities as the alleged final policy makers for the City and County of Denver ("Denver") with regard to the alleged unconstitutional policies is treated as a claim against Denver. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(stating that an official capacity suit is "another way of pleading an action against an entity of which an officer is an agent"); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs,* 151 F.3d 1313, 1316 n. 2 (10th Cir.1998). Because Denver is a named defendant, the official capacity claims against the individual defendants are duplicative and should be dismissed.

 Denver cannot be held liable in a § 1983 action unless a municipal custom or policy the "moving force" behind a con-

stitutional deprivation. *Myers,* 151 F.3d at 1316 was (citing *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Board of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Alternatively, Denver may be held liable for the actions or decisions of a city official who has final policy making authority for Denver with respect to the challenged action. *See Camfield v. City of Oklahoma City,* 248 F.3d 1214, 1229 (10th Cir.2001)(citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Accordingly, to sustain her claim against Denver, plaintiff must proffer evidence to show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Camfield,* 248 F.3d at 1229 (internal quotation marks omitted).

 According to plaintiff, Denver's unconstitutional policy of covering up police officers' illegal searches and seizures and their unlawful use of excessive force is evidenced by the following: the Denver Police Department Office of Internal Affairs' disposition of the complaint plaintiff filed about the objectionable conduct of defendant police officers Blea, Sagan and Vasconcellos which is the subject of the instant action; newspaper articles plaintiff has read about other individuals who have alleged police misconduct; and her own conjecture. *(See, generally,* Barton Deposition, at 192–194; Plaintiff's Supplemental Responses to Interrogatory Nos. 14 and 15) Plaintiff's evidence is inadequate to show the existence of a Denver policy to cover up police officer misconduct which allegedly violates citizens' Fourth Amendment rights. Moreover, assuming that de-

fendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey were final policy makers for Denver with regard to the alleged policy, there is no evidence in the record tending to show that those defendants authorized or acquiesced in the defendant police officers' decision to engage in the conduct that allegedly violated plaintiff's Fourth Amendment rights. Instead, plaintiff relies on evidence that defendants learned about the incident after the fact and argues that defendants are liable for failing to take appropriate remedial action. To hold a supervisor liable under § 1983, however, plaintiff must point to evidence that the supervisor participated in the constitutional violation at the time it occurred; that the supervisor knew about and acquiesced in the constitutional violation at the time it occurred; or, that the supervisor's failure to supervise caused the constitutional violation. *See Harrington,* 268 F.3d at 1187 (citing cases). The record is devoid of any such evidence.

■ Plaintiff's claim that Denver had an unlawful policy of maliciously prosecuting persons mistreated by police officers should also be dismissed. Although the undersigned has recommended a finding that defendants' motion for summary judgment on plaintiff's § 1983 malicious prosecution claim be denied as to defendants Blea and Sagan, there is no evidence that those defendants acted pursuant to a municipal policy or that their conduct was directed or authorized by an individual with final policy-making authority for Denver.

Accordingly, defendants are entitled to summary judgment on plaintiff's claim against the City and County of Denver for promulgating and implementing unconstitutional policies or customs of violating citizens' Fourth Amendment rights.

### D. Malicious Prosecution under State Law

Defendants next move for summary judgment on plaintiff's claim that defendants Wortham and Ramsey, the Denver City Attorney and Assistant City Attorney, respectively, are liable under state law for maliciously prosecuting the plaintiff.

■ Under Colorado law, prosecuting attorneys are immune from liability in a civil action for malicious prosecution where they act within the scope of their prosecutorial duties, even when the prosecution is malicious and lacks probable cause. *McDonald v. Lakewood Country Club,* 170 Colo. 355, 461 P.2d 437 (1969); *Stepanek v. Delta County,* 940 P.2d 364, 368 (Colo. 1997).

Defendants' motion for summary judgment on plaintiffs' state law malicious prosecution claim against Wortham and Ramsey should be granted.

### E. Outrageous Conduct

■ Defendants move for summary judgment on plaintiff's state law outrageous conduct claim against all of the individual defendants *except for* defendants Blea, Sagan and Vasconcellos.

Plaintiff alleges in her complaint that the defendants' conduct, other than defendant Hickenlooper, "in arresting, searching and assaulting the plaintiff, a 68 year old woman who was obviously terrified and not connected to any crime, and persisting in her prosecution without probable cause, knowing that no crime had been committed, thereby engaged in extreme and outrageous conduct." (Consolidated Compl., at ¶ 100)

■ To prove a claim of outrageous conduct/intentional infliction of emotional distress, the defendants' actions must have been "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970)(citing the *Restatement (Second) of Torts* § 46 (1965)). The objectionable conduct must be such that an average member of the community would exclaim, "Outrageous!" *Id.*

I have recommended previously that plaintiff's § 1983 malicious prosecution claim against defendants Whitman and Sandoval be dismissed because there is no evidence in the record that those defendants personally participated in prosecuting plaintiff on the charge of "Interference with Police Authority." Further, the record is devoid of any evidence that would support a finding that defendant Webb personally participated in the prosecution of plaintiff, or that Webb, Whitman or Sandoval were involved in the alleged illegal search and seizures or in the alleged use of excessive force against plaintiff on February 24, 2002. Accordingly, summary judgment should be granted in favor of defendants Whitman, Sandoval and Webb on plaintiff's outrageous conduct/intentional infliction of emotional distress claim.

Defendant Denver prosecutors Wortham and Ramsey are also entitled to summary judgment on plaintiff's outrageous conduct claim because they are absolutely immune from liability for their prosecutorial acts.

### F. *Injunctive Relief*

Defendants argue that plaintiff's request for injunctive relief should be dismissed because plaintiff stated in her deposition that she was not seeking an injunction against any of the defendants. Because plaintiff concedes that she is not interested in obtaining an injunction to prevent any further alleged misconduct by the defendants, *see* Barton Deposition, at 240, I recommend that her request for injunctive relief be dismissed.

## IV.

For the reasons set forth above, it is

**RECOMMENDED** that Defendants' Motion for Partial Summary Judgment [filed August 15, 2005] be **GRANTED in substantial part and DENIED in part** as follows: Plaintiff's § 1983 excessive force claims against defendants Sagan, Blea and Vasconcellos should be **DISMISSED**, except the claim of excessive force arising from the first seizure on February 24, 2002, and predicated on the jury's determination that the seizure occurred during the course of a lawful investigatory stop; plaintiff's § 1983 and state law malicious prosecution claims against defendants Vasconcellos, Whitman, Sandoval, Webb, Hickenlooper, Wortham and Ramsey should be **DISMISSED**; plaintiff's claim against the City and County of Denver should be **DISMISSED**; plaintiff's state law outrageous conduct/intentional infliction of emotional distress claim should be dismissed against defendants Hickenlooper, Webb, Whitman, Sandoval, Wortham and Ramsey; and, request for injunctive relief should be **DISMISSED**. Summary judgment should plaintiff's be denied on plaintiff's § 1983 malicious prosecution claim against defendants Blea and Sagan. It is

**FURTHER RECOMMENDED** that defendants Ramsey, Wortham, Webb, Hickenlooper, Sandoval, Whitman, the City and County of Denver, and the claims against defendants Blea, Sagan and Vasconcellos in their official capacities, be **DISMISSED**.

**The claims remaining, if this Recommendation is adopted, are:** Plaintiff's § 1983 Fourth Amendment unlawful search and seizure claims; § 1983 Fourth Amendment excessive force claim against Blea, Sagan and Vasconcellos, arising from

the first seizure on February 24, 2002 and predicated on the jury's determination that the seizure occurred during the course of a lawful investigatory stop; § 1983 malicious prosecution claim against Blea and Sagan; and, state law outrageous conduct claim against Blea, Sagan and Vasconcellos.

Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado. The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.